May it please the Court, I'm Zach Sprouse and I represent CLJ. If I could, Your Honor, I'd like to ask that I dedicate most of my time today to talking about issues you want to talk about, but the statute of limitations I feel like is the real issue that I'd like to address. As this Court knows, there's a case called Campbell that deals with this issue in part. In a footnote, the District Court called that dicta, but what we have is a bad faith claim that cannot accrue until the judgment is entered. In this case, that would have been December of 2018. So whether we apply a breach of contract, statute of limitations, breach of fiduciary, statute of limitations, or even a two-year statute of limitations, we're well inside of that. This is the majority line. Okay, you're talking about the bad faith claim specifically. Exactly. Yes, sir. And you're saying that that's under Utah law because the accrual time is different in Georgia? Well I think Georgia follows that same point. We are applying Utah law. I think that unfortunately, you know, no one's fault, but through the course of Campbell, I think that some of the lines and some of the first party claims like Beck, for example, that got discussed, I think there was a line there where do we treat it from the breach or is there some sort of negligent not putting your insured on equal consideration terms with the insurer that brings us back into this question of when does it begin? There's a great case out of this Court, the Tenth Circuit applying Nevada law, and that is the majority view by states. I think it clears it up. I think that's consistent with Utah law, but just to be clear, that Tenth Circuit case, Torres, was involving Nevada law. And in that case, we see that the cause of action cannot accrue until the judgment was final on the date of the judgment. That's cited in our brief in that kind of string site on page 37. And that makes sense. For example, in Campbell, where the claim is a bad faith refusal to settle within policy limits. Obviously, you won't know whether or not there has been a breach, whether it was unreasonable until the judgment is issued, and I think that was sort of the rationale animating Campbell. But how does that apply out Campbell, and is there any authority to apply Campbell when you're talking about a claim that does not involve anything about a refusal to settle within policy limits? Because here, Prime couldn't have settled within policy limits if the amount was $50,000. I understand, Your Honor. The first point, we absolutely agree. It does make sense, that proposition. Because as you point out, you don't know whether you have that unreasonable conduct. I'd like to come back to that point, just to address your question specifically. Yes, I think Beck is a good case for that. Even though we've got a first-party case, there's a discussion, I think it's 801 of that opinion, roughly, there's a discussion in Beck's about a third-party case. And Judge Rossman, the Vanderloo case out of Colorado, I mean, we've seen cases from all these states that are really just addressing the policy considerations. But here, yes, we have a refusal to settle on time. And that's what Beck's goes to, the equal consideration. It matters. It matters that the lawsuit had to be filed. There was a opportunity to settle that was not dealt with for a long time. And that's why there's things that's got to go back to the district court. Well, in July 2014, there was no question for CLJ and Dr. Dodds, that if there was a breach, as the Georgia court said that that's the trigger from the breach, there was no question in July 2014 there was a breach. Or certainly, when a declaratory judgment action is filed in 2015, right? Yes, Your Honor, and what complicates the procedural history about this case, 2014-2015, is there's another claim that Prime has, and that's what that Juelmo's case is about, a second kind of claim. But if I could, I want to direct the court, there is a breach, in our view, both before and after the lawsuit's filed. There's another opportunity to resolve it. We might call it cotton demand, but that demand was sent that, in the record, there was testimony from Dr. Dodds. It was never explained to her that if she, let's say the limit's for 50, all right? Well, if the demand's for 100, what does a prudent insurer do? And a prudent insurer, if they're going to put their insured, at least on equal consideration as their own, they're going to say, hey, you know what? You need to go see if you can pay that extra 50. Are we going to address the merits of the good faith claim? Because I think your statute of limitations argument's a lot better than your merits argument. I understand. Are the merits an issue on appeal? Your Honor, I take your point, and I'm sorry I got ahead of myself. I think that this does need to go back down because of the statute of limitations point. Let me ask you about, no, you, Leigh Ann. Sure. We get along very well on this court. Yes, sir. Thank you for having me. Ordinarily, it makes perfect sense that the claim does not accrue until you get the judgment. Here, though, part of it, part of the insurance was to cover litigation costs, attorney fees. If, say, after Prime decided we've paid $50,000, we have no further obligation, if then your client hired another law firm to represent her and the company, you would have absolutely clear damages at that point, and the limitations period would accrue at that time, wouldn't it? If I understand your Honor's question— I'm assuming facts that may not be the facts here, but in that situation, wouldn't the claim accrue at that point? Not as to the bad faith claim for insurance, and that's what that Torres case says in the Vanderloop case. Why not? Let me—maybe I wasn't clear. Yes, sir. If the issue was, if you had settled, I wouldn't be out all this money in damages, then you have to wait to see if there are any damages. Maybe the insured will win the case and there will be no verdict against the insured. So that's why you need to wait for that aspect of damages. But you could also have had damages here from your clients having to pay for an attorney to defend her and the company in this litigation by the patient. And as soon as you start incurring legal fees in that respect, you have damages that are settled, that are actually going to have to be due. So if that were the case, if your client had hired another firm because Prime was no longer supplying the attorney, wouldn't the claim accrue then if those were the facts? Not entirely, Your Honor, and I think it's because of what damages stem and flow from which breach. I think in this case, potentially she might have elected to hire another law firm to counsel her, but her testimony was, no, I mean, she's, and this is what the Beck's case says, you've got to deal with the insured as if they're a layman. I mean, she's not a layman because she's a medical doctor, but she's certainly not no legal expert, no insured. Did she do anything after Prime dropped out? Did she do anything to defend herself? Your Honor, the record's not entirely clear. I don't know the answer to that in terms of, well, yes, I think she did do certain things to defend herself. She did consult with another law firm. I've seen testimony to that end. Did she incur legal expenses for that? I don't know the answer to that. That was not part of the argument by Prime in this case. It was not, and so I understand your point. I think that, again, it's that which damages flow from which breach. If we're talking about bad faith, what they're talking about in Beck's with the third party, what they're talking about in the Torres case. I thought that the damage from bad faith was that the case didn't settle, and the failure to settle affects, the failure to pay more than $50,000 and not settle would affect the legal fees as well as the. . . The end result doesn't make sense until the judgment's entered for. . . I think what Judge Bacharach was trying to say earlier was that you don't know until you have the judgment. And let's look at the policy behind that. Let's say. . . I think I was asking the opposite. Which is that you cannot bring the bad faith claim until the judgment's entered. Well, I was saying that under Campbell, a Campbell claim seems quite different from our situation for exactly the reasons that Judge Hartz has identified. In July 2014, certainly by the time that Prime files a declaratory judgment action in 2015, certainly Dr. Dodds knows that Mr. McBride is not her friend. He's on the other team. Well, I don't know if I'd agree with that entirely, Your Honor. I think there's some contradictory evidence in the record on that point. Really? When Prime files a declaratory judgment action saying we owe you no duty to defend you and we seek a declaration that our responsibilities are terminated? I believe she did not understand, as you and I do, the nature of that declaratory judgment action. And keep in mind her relationship to Prime still. She's still being defended by them in another lawsuit. So they go and file a declaratory judgment action against her in Utah and in another state. They know she's strapped. They know that they're defending her in another wrongful death case. These are horrible facts on the death. I mean, and that's where I have to distinguish this. June was lost a little bit. They tendered their 50, I believe, relatively promptly. That's one of our criticisms before the lawsuit was filed. But, no, I don't think anything about her relationship with McBride, what happened in 2014 to 2015, puts this case, my argument on the statute, on any different footing than what we see in Torres and Beck, and our explanation that it's not really what we want to do to change that posture and say, no, from now on, if the statute triggers on the bad faith claim before you have a judgment, think of what would happen. You're causing uncertainty. You're causing, do we file it now? Causing lawsuits that may not need to be filed. Yes, sir. We spend all the time on the bad faith claim. Do you have any argument on the statute of limitations issue for the other claims? Because under Georgia law, the standard is different, and I don't think there's any dispute that Georgia law governs. Yes, Your Honor. I don't see how you can overcome statute of limitations on the other claims. I understand. Again, I do agree with Your Honor's position. They are distinct, and so I'm stepping into, for this part of the argument, are claims of McBride. I think that we argued, what we argued in the district court was understood as kind of a continuing tort duty. What I understand as is we've got a complete finality of the damages, so you want to see what your damages are. We do have multiple breaches. I think it's important when you're addressing, again, I think it's easy to being a lawyer to kind of, what do we think happened to a Georgia judge? Do you think there were breaches after Prime said we're no longer representing you? I think arguably their conduct by not advising her sooner that they could pay the $50,000 of her own was arguably a breach. Well, that was shortly. That wouldn't affect the amount of time for the limitations, but they sent her an email saying what the demand was, and we're paying $50,000. You think they have to spell out for her that if she wants to settle, she could pay the remainder of that? I think that's a question for a different day. I think that's where we're getting to. I do believe I understand legal questions. It's not what the court needs to hear expert testimony on, but there is expert testimony in this case that's different and some others have followed. Ty Sagalow, I think, testimony is important on those points, but that's after we get back down. I just think, yes, McBride, was he wrapped up in an unusual relationship? Absolutely. These are relatively unique policies, but her position, her understanding of the completeness of the damages, I don't think was ripe at that particular time. I see I only have about a minute and a half left if I may reserve some time for rebuttal or address the court's question. We'd ask the court to reverse remand and get back to five minutes. Thank you, Judge. May it please the court. My name is Axel Trumbo, and I represent Prime Insurance Company and the other appellees. I want to correct one mistake in representation about the record. By the time Prime filed the DEC action in January of 2015, it had spent the entire $100,000 aggregate, and it was asking for a declaration that for each of the claims, the Jenkins and the Beaubrun claim, that there was a $50,000 limit and that it had been spent. I also want to address, I suppose, start with addressing the statute of limitations arguments that were just made and focused on. We think that the district court, in ruling the way that he did, safeguarded an important legal principle in the law, which is that a plaintiff has the right to assert a claim as soon as he or she can show a current actionable injury. And when you can show that... Damages. Don't you have to wait until there's... If you sued before any damages, your case would be thrown out immediately. Don't you have to wait until you've incurred some damages? Right. You have incurred an actionable injury, which means that you have some damages that you can show now. And what could the plaintiff have shown in terms of damages on the bad faith claim before the judgment against the corporation and Dr. Dodd? So under the allegations and the testimony taken as true, you have a wrongful diminishing of the value of the asset of the policy by spending the policy limits in defense when it should have been settled, according to them, before the complaint was even filed or right after it was filed. So you have a diminishing of the value of the policy. Well, that's irrelevant if you never have to pay damages, isn't it? If she never incurred legal expenses of her own and she won the lawsuit against her and the corporation, then it doesn't matter what value the policy had. I wish I would have known that you would have this question before coming to the stand today, because I believe there is evidence in the record of several legal bills that were attached. I don't think it would make any difference at this point if you had raised it. But we don't need that because the policy limits are an asset of CLJs of value that's being depleted. And then you have at the very least by July of 2014, where a declaration by a prime insurance company that this is completely spent. We have no more obligations on this. And they declared that before July, but then on July 2014, the firm withdraws from the defense. And how is she injured by that if a few days later the plaintiff decided, oh, we kind of like Dr. Dodds, we're not going to sue her, and this is the sort of thing that happens. Then how is she injured by the diminution in the value of the policy? I think the way that I would... It's not like a life insurance policy that has a cash value she can take, right? I'm sure that's not the case. So it's just the coverage that would be the value. Well, the pot of funds for defense and indemnity is the same pot in this insurance policy. So she doesn't have anything left to pay the claim. But I think what Your Honor is referring to is whether there could be some mitigation of her damages in the future, or if there could be her projection of future damages could be less than what, more or less depending on how... If she suffers any damages, if she has to pay anything from the lawsuit, much less the $40 million or whatever the judgment was, then at that point it's clear she has an injury. But until the jury rules, until it goes to a verdict and judgment against her, she hasn't suffered any loss from lack of coverage for lack of liability coverage. Your Honor, respectfully, I don't believe that the case law would bear that out in terms of... That would be interesting because you have cases, you think, where... Because it seems like it's almost universal that the failure to settle claim, bad faith failure to settle claim, does not accrue until you find out whether the insured was harmed by having less coverage or no coverage. And you can't know that until the judgment. Those cases are talking about a particular fact pattern. For example, the Campbell case, where you have a couple months before the trial, or some time before the trial, you have demands to settle and a refusal to settle. So the insurance company is saying, I'm not going to pay the policy limits or something within policy limits. I'm going to go to trial. And the only alleged... The only harm in that case was the excess judgment and the emotional harms related to that. And so in that situation where you have a decision to not settle but to go to trial, not only do you... It's not so much even that you don't know what your damages are going to be. It's that you don't know even if you've been harmed. You don't know whether the decision was reasonable or unreasonable yet until you get the result there. Now, this is a very different type of a case. This is a case where there is an offer to settle within the entire limits. That's rejected. And the argument is that we should have been doing other things, sort of other clever workarounds to try to get this case resolved and that we failed to do that. And because of that, their policy depleted, and then we withdrew from the case,  Who cares if the policy is depleted if she has no further legal expenses and no judgment? My understanding of the law is that it's almost universal, that this sort of claim does not accrue until judgment against the insured in the litigation. And if there are exceptions, I think there was one exception, but it was inapplicable to the facts here. So to persuade me, I'd like to see a case where the claim is held to have accrued before there's a liability judgment against the insured. Let me perhaps give you maybe the next best thing in my mind. We cited Taseel v. Goins in Utah. This is the Utah Supreme Court in 1996, which was after Campbell. And that was a breast cancer case. And the case was about if you have arguments that you're going to be harmed in the future by an increased risk of getting cancer, if that's all you have, then you don't have a complete claim yet. You can't sue yet. And you might never sue unless you find that... Is this a malpractice claim? And you're raising a lost chance theory? This was a medical malpractice claim saying that because you didn't catch my condition early enough, I have an increased risk of getting cancer in the future. Now, what the Utah Supreme Court explained was this is the rule, this is the line. If you have a current actionable injury plus an argument of future damages, then you have the right to sue, and you have to sue within the limitations period, and then you have to put on your evidence of your current and past damages as well as future damages, all in the same lawsuit. And, in fact, I will note, in 2005, there was another case by the Utah Supreme Court, Medved v. Glenn, where the court looked at Seale again and explained it in detail, explained its decision, and noted that some attorneys had misread Seale as saying, you need to wait until that future thing happens before you sue. And the court said, to the extent anybody's been misled by Seale or a misreading of Seale and has been waiting too long to file their action, we're going to restart your statute of limitations as of the date of this order, of this opinion, and made clear that if you do have some actionable injury, your statute of limitations starts. And there's good reason for that. So in this case, the day after Prime says, we're not covering you anymore, the corporation dots sue, what money can they get as an award at that point? Where's any monetary damage to that? So here's, I think, the strategy. The day after, you make a choice. Do I need, and this is part of why it's important to give plaintiffs the right to sue, as soon as they can show an actionable injury. They can decide, do I need to seek immediate relief now and sue the day after and try to get some injunctive relief or try to get some judgment to get back the policy that was wrongfully spent or something along those lines now? Or can I wait, in this case four years, to allow things to develop and maybe have an easier time proving what is currently future damages here? In fact... Okay, so what could they, to answer my question, how could a jury award plaintiffs any damages based on the facts the day after Prime quits covering her? The day after Prime, the court's saying July of 2014, the money's gone. You're right. And so the jury says, you're awarded $50,000, the money that was wrongfully spent. Well, that's the contract claim. What about the bad, that's, if plaintiff wins on the interpretation of the contract, we have a different case. I don't see that, that's not as strong an argument as the limitations period argument. So just on the bad faith, for example, saying one of the cause of action for bad faith is you didn't tell the doctor that she could have paid $50,000 and gotten rid of this whole case. What damage from that alleged bad faith did anyone suffer on the date that Prime discontinued, said you've exhausted everything you get under our policy? So there's, just like in a case where you have an argument of future medical damages, you have current damages? I've never heard of loss of a chance in any context except medical malpractice, where you're saying your malpractice deprived me of the chance of maybe getting some treatment that would have cured me later. Or even in a typical car accident case, you're going to have, you're going to be able to prove past damages, but you're also going to say, I think I'm going to need two or three surgeries in the future. You don't know that yet, but you need to file your claim within the statute of limitations. In this situation, you have the past damages, which is the loss of the policy funds that were spent inappropriately. You have maybe in a tort setting, a breach of fiduciary duty setting, some emotional or general damages associated with that, I'm not sure. And then you have, looking forward, probably the biggest argument on damages is going to be, I think because they did this, there's going to be a snowball effect, and I'm going to get a big excess judgment against me in the future. And so that's the argument that would be made the day after. They may want to wait a while, four years, for the case to resolve before they file, which I see my time has expired, Your Honor. In this case, for example, the case was going to go to trial, the personal injury case, in 2015, and then got delayed with a bankruptcy. There's a three-year delay. If CLG would have waited the four years and filed within the limitations period, it would have had all the evidence as past damages to put forward. Your Honor, the decisions were correct below, and we ask the court to affirm. Yes, please go ahead. I just wanted to follow up on your answers to Judge Hartz. I think I fully understand your argument, but how do you distinguish Campbell? Because, you know, Campbell involved a more conventional bad faith refusal to settle, but isn't the plaintiff's—Mr. Jenkins' theory here with regard to the failure to tell Dr. Dodds that she could contribute $50,000 and will put in $50,000 is essentially a Campbell-type claim. And after July 2014, when Dr. Dodds is told that there's no more money left in the policy, or even when there's a declaratory judgment action filed next year, there's still, under Campbell, no knowledge that there is even the fact of damage until the excess judgment is rendered in 2018 under Campbell. So how do you distinguish Campbell with regard to your theory that you're answering Judge Hartz with? Your Honor, if you could rephrase that question. Sure. It was a long, convoluted question. But isn't this the plaintiff's theory here? I mean, there are several theories, but the one theory where Mr. Jenkins is saying that Prime failed to tell Dr. Dodds that she could personally contribute $50,000 and we can collectively settle this case for $100,000, no one would know whether or not that ultimately created any fact of damage until the excess judgment is rendered in 2018 under Campbell. So how do you distinguish Campbell? Well, first there are a couple premises that we'd run into the problem that the demand for $100,000 was conditioned on $2 million from another insurance company. We're not addressing the merits of the bad faith claim. Right. But in terms of the factual, you know, we were on summary judgment at that point. That was the evidence in the record is that it was tied and conditional. But I think the second point is still Campbell did not... First, Campbell dealt with a failure to... The principle is you need to take an opportunity to settle within policy limits. That's the legal principle of Campbell. Here, we don't have that if preclusion applies. We have... So it's categorically a different type of case. We don't have a situation where we refuse to settle within the $50,000 policy limit. This is an argument that you should have offered policy limits plus convinced the insurer to put in extra money. That's a very different fact pattern and not one that I think implicates the Campbell line of cases. And I think, finally, there still is knowledge or reasonably should have known that there is actual damages now. Whereas in Campbell, there was no evidence of having suffered damages until the excess judgment. Thank you, counsel. I'll give you two minutes since he went over, but I don't think you need more than two minutes. I may not need it, Judge. Just a couple of brief points. I did want to point out that asking to be let out of a case is not the same as being let out of a case. So that was the first timeline point that it was addressed. So it's true that maybe the request had been filed, but that relationship is still ongoing until the court relieves them of that obligation. So it's clear from the timeline that the declaratory judgment action predated Huff Powell's exit of that Boebring case. Second, you know, I heard some things about what Dr. Dodd should have known. And, you know, again, they're on different footing. I would point to the Beggs case. And I did say page 801 of that opinion. I think really the important discussion starts a little earlier on 799, but that discussion about the layman is 801 of that Beggs opinion. But I would like to point out that their own policy does at least undermine that view. And we discussed that with their level of control and prime who does this. So not talking about the 5100, I'm talking about what they believe for legal action against us. That's Appendix 1, page 132. A person or organization may sue the insurer to recover on an agreed settlement or a final judgment obtained after an actual trial against an insurer. They understand these kind of claims. And as you pointed out, Your Honor, these are the vast majority. I did try to catalog as many as I could. I couldn't find the minority. That, I believe, Vanderloop case is perfect to address why you cannot bring a claim sooner. There's a discussion about Rule 11 in that case. Can you imagine? You bring the case before the final judgment, subject to Rule 11. Plaintiffs could not earlier have asserted within the bounds of Federal Rule Procedure 11 that progressives' conduct had created a justicable controversy by actually exposing him to excess liability judgment. That's exactly why we couldn't bring the case any sooner. Counsel, do you think there's any tension in Utah law on the statute of limitations issue before us? No, Your Honor. I think that there could be clarity. But no, I think Campbell supports us on that position. I believe there's an if-then statement in Campbell, but I believe that Beck's, again, gives us that clarity. But to the extent some other cases have said it more precisely or discussed it in that way, there is strong clarity in the majority. And this Court's discussion in Torres, I'm out of time. If I may just finish this thought. The discussion in Torres, again, applying New Mexico law, again, states our position. But no, I think this case needs to be remanded back to the District Court. And I very much appreciate the Court having me. Thank you, Your Honor. Case is submitted. Counts are excused. Court will be in recess until 9 tomorrow morning. Thank you.